UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:17-cv-00104-MOC-DLH

| | | |
|---|---|---|
| **RONALD WAYNE SPANN,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| **NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY, et al.,** | ) ) | |
| | ) | |
| Defendants. | ) | |

**THIS MATTER** is before the Court upon further hearing of Defendant Dr. Robert Uhren's Motion to Dismiss for Lack of Prosecution and Motion to Compel Discovery (#48). To recap, although purportedly represented by an attorney who is a member of the Bar of this Court, plaintiff failed to respond to that motion by December 7, 2017, as directed by Judge Howell; failed to appear through counsel at a hearing set by the Court on January 4, 2018; failed to respond within the additional 40 days as allowed in this Court's January 5, 2018, Order; failed to respond within the time promised in plaintiff's counsel's Response in the disciplinary proceeding (1:18mc1); and failed to take corrective action before the March 6, 2018, hearing. The Court specifically incorporates its last two Orders herein to provide a more complete picture of the procedural posture of this case.

At the march 6, 2018, hearing, counsel for plaintiff disclosed that despite her involvement in the case since July 2017, the Court's evidentiary hearing was the first time she had met and apparently ever spoke with Mr. Spann. As instructed, counsel for plaintiff brought with her the Power of Attorney ("POA") under which present counsel's predecessor filed this action. Review

-1-

of that POA reveals that it was executed in 2009 and is the standard North Carolina short form power of attorney. Close review of the POA reveals that Mr. Spann did not convey to his mother, Ms. Land, the authority to act on his behalf in regards to litigation.

North Carolina General Statute § 32C-2-212, which became effective January 1, 2018, now allows conveyance of the right to litigate by way of a power of attorney. In the commentary to that provision, it is noted that "this [new] section does not have a counterpart in former Chapter 32A which did not provide for incorporation by reference of powers concerning claims and litigation in the Statutory Short Form Power of Attorney pursuant to former G.S. 32A-1." Notes to § 32C-2-212. Here, it appears that former counsel initiated this action in 2017 based on a POA executed in 2009 which did not, on its face, assign to Mrs. Land the authority to litigate on plaintiff's behalf and could not have done so under North Carolina law. It is clear that before January 1, 2018, North Carolina short form powers of attorneys did not convey the authority to initiate litigation, and the POA at issue here clearly did not delegate that authority to Mr. Spann's attorney in fact. Indeed, the sections selected therein are limited to tax matters, Social Security benefits/unemployment, personal relationships and affairs, and property transfers. The Court has directed that the POA tendered in open court at the evidentiary hearing be filed in the docket to aid future review.

Having practiced criminal law, the undersigned certainly understands why a person preparing for prison would execute a POA in favor of a trusted family member to look after their personal affairs and family obligations while incarcerated. In this case, it is clear that Ms. Land was entrusted with that authority because she is a very responsible and intelligent person as the Court observed in its interactions with her during the January 2018 hearing. However, it does not

follow that an incarcerated person would execute a POA to allow a person to act as their attorney-in-fact in litigation related to the conditions of their confinement, unless that person was incapacitated. Thus, this Court concludes that former Attorney Exum lacked sufficient authority to file this action under Rule 17(c), Federal Rules of Civil Procedure, as neither North Carolina law governing powers of attorney nor the actual POA conveyed such authority to the attorney-in-fact.

Such lack of authority *ab initio* does not necessarily mean that plaintiff could not affirm and adopt such litigation. At the hearing, the Court inquired of plaintiff concerning his desire to have present counsel represent him, his scholastic attainment, and any mental disabilities he may be suffering. Plaintiff stated that he attended school up to the ninth grade and suffers from memory loss due to concussions. He also stated that he wanted an attorney who would look out for his legal interests. In its discussions with plaintiff, the Court was impressed with plaintiff's intelligence, his high degree of engagement in the in-court proceedings, and his ability to communicate his position to the Court. At no point, however, did plaintiff express an unequivocal desire to retain the services of present counsel.

Despite what the Court believed were sincere representations of plaintiff's counsel that she would be able to respond to the Motion to Dismiss for Lack of Prosecution and Motion to Compel Discovery after discussing answers to interrogatories with the client, the Court was convinced by Defendant Uhren's argument that counsel's track record in this matter did not support that representation. While counsel may have had with her proposed discovery responses, she did not indicate she had with her any response to the pending *dispositive* motion, the motion to compel, a motion for protective order, or a motion to reopen and enlarge the time to respond to the motions

or, for that matter, to the discovery requests. Put another way, while it would be a step in the right direction to provide discovery responses, counsel for plaintiff did not indicate that such late-served response would be accompanied by pleadings necessary to bring that response into compliance. Indeed, it was readily apparent to the Court that counsel was not familiar with the Federal Rules of Civil Procedure or the Local Civil Rules of this Court. When asked what other civil cases she had in this Court, counsel for plaintiff correctly responded that she had one case, but could not remember the name of the judge presiding in that case. That response did not give the Court confidence. It appearing that the case was filed in violation of Rule 17(c), that plaintiff has not affirmatively accepted representation, and that present counsel lacks federal civil experience, the Court concludes that this case must now be terminated.

Having made that determination, the Court's primary concern is now with protecting the legal interests of the putative plaintiff, Mr. Spann. This is not to say that defendants have not been harmed, because they certainly have been harmed through wasted time and expense. It appears, however, that Mr. Spann may well have been harmed insofar as whatever claims he may have are now nearly a year older and may be subject to the running of statutes of limitation. Further, adverse decisions were made against claims asserted on his behalf in an action where he was not represented. Whether those decisions will have any *res judicata* impact in a subsequent action remains to be seen. It is arguable that this action is a complete nullity as far as plaintiff's legal interests. However, since more than a year has transpired, the Court is concerned that the statute of limitations may well have run as to claims plaintiff may have.

At the hearing, when asked what the Court should do, Defendant Uhren argued that a dismissal of the action without prejudice would forestall the running of any statute of limitation

for one year. The Court then took a recess and asked defense counsel over that break to either find the Court a citation for that proposition or, if she could not, to seek permission from her client to stipulate to such an extension. Due to being unable to bring her computer in the building, counsel was unable to access Westlaw; fortunately, the Court was able to find authority over the break which provided that a dismissal without prejudice in federal court carried with it a one year grace period for refiling under state law. <u>Strawbridge v. Sugar Mountain Resort, Inc.</u>, 243 F.Supp.2d 472 (W.D.N.C. 2003).

While a Rule 41 dismissal without prejudice does allow a plaintiff to refile within a year, the Court was also concerned with the rule's requirement that defense costs be paid before refiling as plaintiff is indigent. Defendant Uhren, agreed that he would waive that provision if plaintiff decided to refile this action; further, counsel for the remaining parties also notified the Court that they too would so agree. Notice (#64). Defendants are commended for their commitment to the fair administration of justice. With those agreements, the Court is now convinced that it has minimized the harm to a completely blameless litigant. The previously imposed sanction against plaintiff's present counsel remains and counsel will be allowed until March 27, 2018, to pay that amount.

Finally, the Court turns to the conduct of present counsel for plaintiff. Her handling of the Motion to Dismiss for Lack of Prosecution and Motion to Compel Discovery has been deplorable at every turn: she failed to comply with the Court's Pretrial Order; she failed to comply with the disclosure requirements of Rule 26, Federal Rules of Civil Procedure; she failed to file a Response as required by Local Civil Rule 7.1; she failed to file any motion to reopen and enlarge any missed deadline; she failed to appear at a hearing; she apparently failed to review and/or comprehend the

power of attorney; and she failed to recognize the opportunities provided to her in numerous Orders to correct her errors. Perhaps her greatest failure was in failing to recognize or admit her own limitations. Had counsel for plaintiff simply informed the Court that she was in over her head and outside the area of her expertise, the Court is certain that all counsel and all judicial officers involved in the litigation would have done everything within their power to assist in the orderly transition of counsel and in assuring that this action was in full compliance with Rule 17(c).

For some judges, if not most, such errors would be a one way ticket to disbarment. Indeed, this Court has contemplated pressing for counsel's removal from the Bar of this Court and earlier entered an interim federal suspension Order (with leave to appear and prosecute this case) in a separate proceeding now pending before the Board of Judges, 1:18mc1.

At the hearing, the Court made inquiry of counsel concerning her experience, conduct, and motivations in this case. She stated that she had been a licensed attorney for 24 years and regularly practiced in the bankruptcy court in this district and that she had never been the subject of a disciplinary action. Review of the North Carolina State Bar public records confirms such representations. She also stated that she took this case over from former Attorney Exum when Ms. Exum was suspended because Ms. Exum was a personal friend. While that is commendable, all counsel have a duty to familiarize themselves with even an adopted case to assure themselves that the case was properly lodged. Where it appears that such authority is lacking, the attorney is obligated to consult with the actual litigant and determine whether that person wants to continue with the litigation and the representation and to secure an appropriate employment agreement.

It does not, however, appear that present counsel has any experience in prisoner or federal civil rights litigation and has had very limited experience in federal district court. Just as an

experienced civil litigator would likely be unfamiliar with the intricacies of practice in bankruptcy court, it is readily apparent to the Court that counsel for plaintiff's experiences in bankruptcy have not prepared her for the rigors of practice in federal district court. Unlike bankruptcy court, which is driven by meetings of creditors, hearings, and actions by bankruptcy trustees, federal civil practice is driven by paper, deadlines, interaction between counsel, and the Federal Rules of Civil Procedure and Local Civil Rules. Indeed, the lapses in filing may well be attributable to counsel's prior work in bankruptcy court, which the Court has seen on a number of occasions when bankruptcy practitioners are dragged into federal civil proceedings. This does not mean that they are not good attorneys or good people; rather, it means that they may not be prepared, and most compensate by associating experienced federal civil practitioners. However, it is apparent that neither federal prisoner litigation nor federal civil practice is in the wheelhouse of present counsel.

Thus, the Court concludes that counsel for plaintiff is simply over her head and that her conduct in this matter, while almost inexplicable, was neither intentional nor malicious. Clearly, present counsel took this case with the best-of-intentions: to assist in managing the caseload of a suspended lawyer. That is laudable. The undersigned is familiar with the demands placed on solo-practitioners and has observed how taking on a case outside one's professional wheelhouse can collapse a practice and debilitate a lawyer. The mistake in taking on this case should not, however, prevent counsel from serving others, especially in her area of expertise, bankruptcy. The Court will not further sanction counsel for plaintiff.

If the plaintiff desires to hire present counsel to represent him in any further action, he would certainly be within his rights to engage in such a contract; however, before taking on such a case, counsel should seriously consider whether she has the skill set to pursue civil rights

litigation on behalf of incarcerated clients as the challenges are substantial. Indeed, this Court has three staff attorneys who do nothing but prisoner litigation.

The Court will, therefore, impose no further sanction in this matter and will terminate the disciplinary proceeding without prejudice. The Clerk of Court will be instructed to assign any future case filed by this plaintiff to the undersigned so that the Court can take an active and early role in the management of that litigation.

**ORDER**

**IT IS, THEREFORE, ORDERED** that Defendant Dr. Robert Uhren's Motion to Dismiss for Lack of Prosecution and Motion to Compel Discovery (#48) is **GRANTED**, and this action is **DISMISSED** without prejudice as to refiling within one year. The Court specifically notes that the remaining defendants have waived plaintiff's obligation under Rule 41 to pay their costs prior to any such refiling.

**IT IS FURTHER ORDERED** that the payment by Counsel for Plaintiff to Defendant Uhren, however, shall be paid within 21 days of this Order. The Court specifically retains jurisdiction to enforce that payment if not made within the extension of time provided herein.

The Clerk of Court is instructed to also file this Order in **1:18mc1** and note in such case that the disciplinary action has been **TERMINATED** without prejudice prior to submission to the Board of Judges.

The Clerk of Court is instructed to assign any future case filed by this plaintiff to the undersigned so that the Court can take an active and early role in the management of that litigation.

Signed: March 13, 2018

Max O. Cogburn Jr
United States District Judge